**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Sergio Manuel Chilel Lopez,
Plaintiff,
v.
Ur M Jaddou,
Defendant.

No. CV-25-00285-PHX-DWL (ASB)

**ORDER**

Sergio Lopez, through counsel, filed a Complaint for a Writ of Mandamus to compel United States Citizenship and Immigration Services ("USCIS") to adjudicate his petition for a T-visa as a victim of human trafficking. (Doc. 1.) Plaintiff also sought to enjoin his removal pending resolution of this action. (Doc. 2.) After an emergency hearing on January 30, 2025, the Court denied the request for a temporary restraining order. (Doc. 8.)

On February 20, 2025, Plaintiff filed a seven-count amended complaint against Ur Jaddou ("Jaddou"), the Director of USCIS. (Doc. 10.) In Count One, Plaintiff seeks mandamus relief to compel adjudication of his T-visa application. In Counts Two and Three, Plaintiff alleges that the failure to adjudicate his T-visa application has resulted in violations of his due process rights and the Administrative Procedure Act ("APA"). In Count Four, Plaintiff raises a challenge to the regulation that authorizes ICE to execute removal orders before adjudication of a T-visa application. In Count Five, Plaintiff alleges that his removal would violate his due process rights and the APA. In Count Six, Plaintiff challenges, as arbitrary and capricious, USCIS's adverse "bona fide determination." And

in Count Seven, Plaintiff asserts a claim for attorneys' fees.

Now pending before the Court is Defendant's motion to dismiss. (Doc. 16.) In support, Defendant submits evidence establishing that Plaintiff was removed from the United States on February 21, 2025. (Doc. 16-1 at 9.) Defendant thus argues that Plaintiff's mandamus and APA claims are moot "since an order requiring adjudication would not address Plaintiff's claimed harms." (Doc 16 at 8 n.3.) In response, Plaintiff concedes that Counts One, Two, and Three are moot and does not oppose dismissal of those claims on that basis. (Doc. 19 at 2.)[1]

In Count Four, Plaintiff alleges that 8 C.F.R. § 214.204(b)(2)(i), which "allow[s] ICE to execute removal orders while an applicant's T visa is still pending," "is invalid because it is at odds with, or exceeds the authority granted by, the T Visa statute" and "is also invalid because it exceeds the authority delegated to the agency," as "[a]gencies cannot create regulations that negate the very protections Congress intended." (Doc. 10 ¶¶ 102-06.) Plaintiff seeks "declaratory relief holding that 8 C.F.R. § 214.204(b)(2)(i) is invalid and . . . an injunction barring ICE from removing Plaintiff and similarly situated individuals

[1] Plaintiff's concession of mootness appears to be predicated on his belief that once a T-visa applicant is removed from the United States, the applicant becomes statutorily ineligible for relief. (Doc. 10 ¶ 4 ["USCIS cannot grant a T visa to someone who is no longer in the USA."]; Doc. 19 at 4 [stating that "executing removal before the agency adjudicates the claim" results in "eliminat[ing] a trafficking victim's eligibility for relief"].) Defendant agrees that removal forecloses relief. (Doc. 16 at 8 ["Since being removed on February 21, 2025, Plaintiff has been rendered statutorily ineligible for T nonimmigrant status because he is no longer physically present in the United States or at a port of entry."].) Given the parties' shared understanding of this issue, the Court operates from the same premise for purposes of this order. *United States v. Sineneng-Smith,* 590 U.S. 371 (2020). The Court notes, however, that not all courts appear to agree with that premise. *Compare Allaico Pacheco v. Noem*, 2026 WL 475293, *4 (W.D. Tex. 2026) ("The Court acknowledges that removal will strip Petitioners of their eligibility for a T-visa . . . .") *with Quichimbo Sumba v. Edlow*, 2026 WL 630005, *11 (D. Mass. 2026) ("At the February 10, 2026 hearing, the parties disagreed as to whether Mr. Quichimbo's removal would moot his T visa application [but] . . . [a]fter the hearing, the parties submitted a joint status report, indicating that they had conferred and reached consensus that removal would moot the application. . . . However, the Court notes that the relevant regulation states that 'an applicant must be physically present in the United States, American Samoa, the Commonwealth of the Northern Mariana Islands, or at a port-of-entry thereto on account of such trafficking' and that 'USCIS considers the applicant's presence in the United States at the time of application.' It is true that an individual applying for an immigration benefit generally 'must establish that he or she is eligible for the requested benefit at the time of filing the benefit request and must continue to be eligible through adjudication.' But the Court fails to see how that leads to a continuous physical presence requirement.") (cleaned up).

before USCIS adjudicates their T visa applications." (*Id.* ¶ 108.)

Defendant moves to dismiss Count Four on the ground that "[n]othing in 8 U.S.C. §§ 1101(a)(15)(T) or 1184(o) prohibits ICE from executing a removal order while a T nonimmigrant visa application is pending. Countervailing authority at 8 U.S.C. § 1231(a)(1)(A) directs that aliens with final removal orders shall be removed except as otherwise provided in that section, and no specific exception for T nonimmigrant applicants is provided. Thus, the regulation does not conflict with the statute governing T nonimmigrant visas." (Doc. 16 at 14.) In response, Plaintiff argues that because the T-visa statute's "protections hinge on the applicant's continued presence in the United States and cooperation with law enforcement authorities—objectives that removal before adjudication categorically defeats," it follows that 8 C.F.R. § 214.204(b)(2)(i) "renders the benefit illusory" and is "is incompatible with the statutory scheme." (Doc. 19 at 4-5.) In reply, Defendant argues that Plaintiff "ask[s] the Court to read words into the statute that simply are not there" and emphasizes that other provisions of the Immigration and Nationality Act ("INA") show that Congress "knows how to specify that a particular condition precludes removal," such that the absence of this feature in the T-visa statute raises an inference that "Congress act[ed] intentionally and purposely in the disparate inclusion or exclusion." (Doc. 22 at 2-3, cleaned up.) Defendant concludes: "Congress could have included a prohibition on removal of T-visa applicants, as it did for other types of applicants, but it did not do so. In fact, Congress expressly vested in the Secretary of Homeland Security discretionary authority to grant an administrative stay of removal for applicants who establish a prima facie case for approval of their application, which Plaintiff did not, indicating that it intended for removals to proceed notwithstanding the filing of a T-visa application. Claim Four must be dismissed for failure to state a claim." (*Id.* at 4.)

The Court agrees with Defendant that Count Four is subject to dismissal. As an initial matter, the Court concludes that it lacks subject-matter jurisdiction in relation to Count Four. The first form of relief Plaintiff seeks in Count Four is a declaration that 8 C.F.R. § 214.204(b)(2)(i) is invalid. However, Plaintiff does not explain how such a

declaration would likely redress any of his claimed injuries now that he has been removed—an outcome that, as discussed in footnote one, now renders Plaintiff ineligible to receive a T-visa—and given the absence of any claims for return- or parole-based remedies in the current version of the complaint. *See generally Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (one component of the "irreducible constitutional minimum of standing" is that "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision") (cleaned up). Instead, Plaintiff emphasizes that declaratory relief would redress the injuries of *other* T-visa applicants. (Doc. 19 at 3 ["Dismissal of the remaining claims would prematurely extinguish a challenge to a regulatory scheme that operates in direct conflict with the statute it purports to implement—a scheme that, if unchecked, threatens the viability of T visa protections for thousands of trafficking survivors nationwide."].) But Plaintiff lacks standing to pursue relief on behalf of non-parties in this individual action. *Cf. Bayer v. Neiman Marcus Group, Inc.*, 861 F.3d 853, 868 (9th Cir. 2017) ("[Plaintiff] argues a declaratory judgment would be meaningful under the circumstances of this case because it would vindicate his rights and make him the prevailing party in this action. However, a declaratory judgment merely adjudicating past violations of federal law—as opposed to continuing or future violations of federal law—is not an appropriate exercise of federal jurisdiction. The value of the judicial pronouncement—what makes it a proper judicial resolution of a 'case or controversy' rather than an advisory opinion—is in the settling of some dispute which affects the behavior of the defendant towards the plaintiff. [Plaintiff] has provided no basis upon which to conclude declaratory relief might affect [Defendant's] behavior towards him. . . . [Plaintiff further] argues that even if he is no longer subjected to [Defendant's] alleged unlawful conduct, his claim for declaratory relief is not moot because the relief sought pertains to an ongoing policy. But to avoid mootness with respect to a claim for declaratory relief on the ground that the relief sought will address an ongoing policy, the plaintiff must show that the policy has adversely affected and continues to affect a present interest. The mere existence of an ongoing policy is insufficient to establish that a plaintiff

challenging that policy has standing to attack all its future applications.") (cleaned up).

The next form of relief sought in Count Four is an injunction barring Plaintiff's removal, but that request is moot now that Plaintiff has been removed. Furthermore, as discussed below in relation to Count Five, the Court lacks jurisdiction to issue an injunction against removal. Finally, to the extent Count Four also includes a request for an injunction against removal that would apply to third parties, Plaintiff lacks standing to seek such relief.

Alternatively, even assuming the Court retains subject-matter jurisdiction in relation to Count Four, it fails to state a claim for the reasons identified by Defendant. The T-visa provisions at 8 U.S.C. §§ 1101(a)(15)(T) and 1184(o) do not include any language barring removal pending adjudication of a T-visa application. Moreover, Congress specifically authorized DHS to grant an administrative stay of removal to a T-visa applicant who establishes a prima facie case for approval. 8 U.S.C. § 1227(d)(1)(A) ("If the Secretary of Homeland Security determines that an application for nonimmigrant status under subparagraph (T) or (U) of section 1101(a)(15) of this title filed for an alien in the United States sets forth a prima facie case for approval, the Secretary may grant the alien an administrative stay of a final order of removal under section 1231(c)(2) of this title until . . . the application for nonimmigrant status under such subparagraph (T) or (U) is approved."). That provision would be superfluous if, as Plaintiff seems to contend, all T-visa applicants are entitled to a stay of removal regardless of whether they have established a prima facie case for approval. Against this backdrop, Plaintiff has not established that 8 C.F.R. § 214.204(b)(2)(i) is invalid. *See also Garcia v. Noem*, 2025 WL 3237502, *5 (W.D. Wash. 2025) ("Congress in creating the T visa did not mandate that the filing of a T visa application automatically requires the application to be adjudicated prior to the enforcement of a removal order."); *Tenelema v. Freden*, 2025 WL 3514099, *6 (W.D.N.Y. 2025) ("Petitioner has not shown that . . . he is entitled under relevant law and regulations to have his T visa application adjudicated by the agency prior to his removal."); *Allaico Pacheco v. Noem*, 2026 WL 475293, *4 (W.D. Tex. 2026) ("Petitioners . . . have [not]

provided anything to support the idea that Respondents are obligated to expedite the review of a T-visa applicant facing imminent removal. The Court acknowledges that removal will strip Petitioners of their eligibility for a T-visa, but finds that it cannot read any obligation imposing expedited or higher-priority treatment for T-visa applicants facing removal in light of the regulation's explicit mandate that pending applications do not affect Respondents' ability to execute a final removal order.") (citations omitted).

In Count Five, Plaintiff argues that his removal without deconfliction would "violate[] the APA and due process." (Doc. 10 at 28.) As relief, Plaintiff argues that "[t]he Court should declare ICE's failure to conduct deconfliction unlawful under the APA and Due Process Clause, enjoin Plaintiff's removal, and compel ICE to comply with its deconfliction policy before taking further action." (*Id.* ¶ 116.)

Subject-matter jurisdiction over Count Five is lacking for the same reasons it is lacking in relation to Count Four—Plaintiff has not established a likelihood that his injuries would be redressed by the issuance of the requested declaration (or by the issuance of an injunction compelling ICE to comply with its deconfliction policy) given that he has already been removed and does not assert, in the current version of his complaint, any claims for return- or parole-based remedies. Additionally, to the extent Count Five seeks to compel "ICE" to take any action, the claim fails because Jaddou (who is not an ICE official) is the only Defendant. Moreover, as Defendant notes (Doc. 16 at 15), "the Court lacks jurisdiction to review the Attorney General's decision to execute Plaintiff's removal order." *See, e.g.*, *Rauda v. Jennings*, 55 F. 4th 773, 776-78 (9th Cir. 2022) (holding that 8 U.S.C. § 1252(g) divested the district court of jurisdiction over a "habeas petition . . . asking the court to enjoin the government from removing [the petitioner] until the BIA ruled on his motion to reopen and the court ruled on his habeas petition"); *Ramirez Ayala v. Santacruz*, 2025 WL 3485738, *2-3 (C.D. Cal. 2025) ("Petitioner seeks to enjoin the execution of his removal order pending the adjudication of the merits of his motion to reopen his removal proceedings. *Rauda* rejected this very same argument. . . . As in *Rauda*, Petitioner's challenge here is foreclosed by § 1252(g)'s plain language. In sum,

§ 1252(g) applies to Petitioner's request to enjoin the execution of his final removal order pending adjudication of the merits [of] his case. Regardless of how Petitioner frames his challenge, he is ultimately contesting an unreviewable discretionary decision that has no temporal restrictions.") (citations omitted). Finally, as Defendant correctly notes (Doc. 22 at 4-5), Plaintiff did not respond to this jurisdictional argument in his response brief, which constitutes a waiver or forfeiture.

In Count Six, Plaintiff alleges that USCIS's adverse "bona fide determination" was arbitrary and capricious because USCIS "cit[ed] vague and pretextual reasons, including unspecified 'national security concerns' and an alleged lack of certainty regarding whether Plaintiff's signature on his application was authentic. This decision was arbitrary and capricious, as Plaintiff has no history of violent or national security-related offenses, and there is no factual basis to suggest he presents a security risk. The agency's reasoning regarding Plaintiff's signature is part of a broader pattern of USCIS issuing across-the-board denials based on speculative concerns about whether applicants were aware of their filings. Despite Plaintiff's compliance with fingerprinting and biometrics—actions that confirm his knowledge of the application—USCIS continues to rely on manufactured concerns over signatures as a basis for denial." (Doc. 10 ¶¶ 118-19.) As relief, Plaintiff seeks (1) an order "set[ting] aside USCIS's denial of Plaintiff's bona fide determination and order[ing] the agency to reconsider its decision in accordance"; and (2) an injunction "enjoin[ing] USCIS from denying bona fide determinations based on arbitrary and pretextual justifications that conflict with the statutory purpose of the T visa process." (*Id.* ¶¶ 123-34.)

The Court concludes that it lacks subject-matter jurisdiction in relation to Count Six for similar reasons that it lacks subject-matter jurisdiction in relation to Counts Four and Five. The first form of relief sought in Count Six is an order compelling USCIS to set aside its earlier adverse bona fide determination and to reconsider that decision, and but even if the Court granted that relief (and even if USCIS subsequently resolved the issue in Plaintiff's favor on reconsideration), Plaintiff would remain ineligible for a T-visa because

he is no longer in the country. Thus, redressability—part of the irreducible constitutional minimum of standing—is lacking. Nor does Plaintiff identify any collateral consequence that will flow from the adverse determination. *Cf. Abdala v. I.N.S.*, 488 F.3d 1061, 1064 (9th Cir. 2007) ("For a habeas petition to continue to present a live controversy after the petitioner's release or deportation, . . . there must be some remaining 'collateral consequence' that may be redressed by success on the petition."). The only other relief sought in Count Six is an injunction requiring USCIS not to provide "arbitrary and pretextual justifications" when making bona fide determinations as to third parties, but Plaintiff lacks standing to seek such relief on behalf of third parties in this individual action.

In Count Seven, Plaintiff seeks an award of attorneys' fees under the Equal Access to Justice Act ("EAJA"). (Doc. 10 ¶¶ 125-29.) This claim is subject to dismissal for an array of reasons—as Defendant notes, (1) Plaintiff is not the prevailing party in light of how his other claims have been resolved, (2) a request for EAJA fees is not, at any rate, a standalone claim, and (3) the statute sets forth a procedure for filing a post-judgment application for fees. (Doc. 16 at 18.)

Having determined that all of Plaintiff's claims are subject to dismissal, the final question is whether leave to amend should be granted. Plaintiff "acknowledges that factual amendments are necessary to reflect his removal and to align the relief sought with those circumstances" and argues that "[w]here a complaint plausibly states a legal violation and may be cured through amendment to reflect post-filing developments, dismissal with prejudice is unwarranted," particularly where he may be able to pursue "return or parole-based remedies that can be pled through amendment." (Doc. 19 at 2-3.) Defendant does not address Plaintiff's amendment request in his reply.

"Generally, Rule 15 advises the court that leave shall be freely given when justice so requires. This policy is to be applied with extreme liberality." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (cleaned up). Given these principles, and in light of Defendant's apparent non-opposition, the Court agrees that leave to amend should be granted. Although it is unclear whether Plaintiff will be able to plead new facts

sufficient to overcome the standing, mootness, and other subject-matter jurisdiction impediments addressed above, he will be allowed to attempt to do so.

Accordingly,

**IT IS ORDERED** that**:**

1. Defendant's motion to dismiss (Doc. 16) is **granted**.

2. Plaintiff may file a Second Amended Complaint ("SAC") within 21 days of the issuance of this order. Plaintiff shall, consistent with LRCiv 15.1, attach a redlined version of the pleading as an exhibit.

3. If Plaintiff does not file a SAC within 21 days of the issuance of this order, the Court shall enter judgment accordingly and terminate this action without further notice to Plaintiff.

Dated this 26th day of March, 2026.

Dominic W. Lanza
United States District Judge